JUDGE OF PROBATE *v.* LANE & A.

When the breach of an administration bond is found, judgment will be for
the whole penalty, and that will stand as security for all interested,
whether their names are indorsed on the writ or not, or whether their
claims were liquidated or not, when such judgment was rendered.

The probate court alone has original jurisdiction of the settlement of ad-
ministration accounts, and a mistake in its decree can be corrected by this
court, for the purpose of fixing the amount for which execution shall be
awarded, only upon appeal.

Where judgment is ordered for the penalty, the court has power to sus-
pend further proceedings until the administration account has been set-
tled in the probate court.

If a manifest mistake has been made in the settlement of such account, it
is competent for the probate court in a subsequent account to correct it,
unless it appears that the particular matter has already been adjudicated.

The statute provisions, that actions shall not be commenced against admin-
istrators within one year after grant of administration, and requiring de-
mands to be exhibited and suits brought within a time limited, do not
apply to demands against administrators, which arise after the grant of
administration, and result from a breach of duty on their part.

DEBT, by Judge of Probate against Samuel N. Lane and others, on the bond of the defendant S. G. Lane, as executor of the will of Sarah Huse. By agreement of parties the case was tried by the court. The reserved case in this action, decided at the law term, June, 1871 (50 N. H. 556), may be referred to as part of this case. The defendants did not amend the pleadings. It was agreed that the executor did not return an inventory within three months, and did not render an account within one year; and that, it appearing that the penalty of the bond was thereby forfeited, judgment must be rendered against the defendants for such penalty. Thereupon a hearing was had in chancery, on such forfeiture, to determine the damages.

The names of the plaintiffs in interest, and the brief statement of their claims, on the writ, were as follows : " By Probate Court, leave granted to Dorcas C. Wilder, of Hopkinton, Adeline H. Flanders, of Weare, N. H., and Martha J. Lang, of Concord, to put in suit the bond of the defendants to the judge of probate for said S. G. Lane's faithful discharge of his duties as executor of Sarah Huse. The cause of the suit is, that S. G. Lane did not faithfully act as such executor, but defrauded the estate and legatees in the sale of land and house on Warren street, in Concord ; and said Wilder, Flanders, and Lang claim damages therefor, as the legatees."

The writ is dated Sept. 4, 1869. The record of the probate court shows that the order of the judge of probate for suit on the bond was made Sept. 4, 1869. The defendants introduced parol evidence to show, and claimed that the fact was, that the writ was made before the order. The court ruled that if the fact were so, it would be no defence on the present hearing ; and the defendants excepted. Sarah Huse, by her will written and witnessed by the executor, dated May 30, 1867, gave to her son, Charles H. Puffer, $1 ; to her daughter, Mary A. Lang, $1 ; to her daughters Adeline H. Flanders and Dorcas C. Wilder, and to her granddaughter Martha J. Lang, the rest and residue ; said Adeline to hold and use the portion given to her during her natural life, and, in case of her decease, then the same to go to her daughter Arabella O. Willard, and to her heirs and assigns forever ; and appointed the defendant, S. G. Lane, executor. Said Martha and Arabella O. are minors ; and the court, at the present term, appointed George K. Lang their guardian *ad litem*, under Gen. Stats., ch. 165, sec. 1. The testatrix died in June, 1867. The executor having caused the will to be proved, was appointed by the probate court, and gave the bond now in suit, Feb. 25, 1868. The inventory, returned August, 1868, was " A lot of land with house thereon, on the south side of Warren street, in Concord, subject to the rights of her husband, John Huse,—$422.00."

By petition, dated July 28, 1868, the executor, representing that the testatrix left no personal estate, but was seized of said lot, " subject to the rights of her husband, John Huse, as by law provided in sec. 4, chap. 164 of the General Statutes of our State," asked for license to sell the same. At the August term, 1868, an order of notice was issued for a hearing on said petition on the fourth Tuesday of Sep-

tember, 1868, at which time license was granted, and the real estate was sold December, 1868.   On the fourth Tuesday of March, 1869, the executor settled his account of administration, in which he was charged for

" Cash accruing from the sale of real estate by license,   $425.00"
And was credited with

" Paid funeral charges,.........................$42.00
     "     taxes of 1867 and 1868,.................. 13.09
     "     sundry debts,........................... 12 50     •
     "     for grave-stones,........................ 18.00
Expense of administration,..................... 55.70
                                                 ————$141.29

                                                     $283.71"

and it was decreed that there was in his hands a balance of $283.71, to be by him accounted for; and this balance he has ever since been ready to account for.

The plaintiffs in interest claim damages for alleged misconduct and fraudulent conduct of the executor in the sale of said real estate ; and in the previous purchase of the interest of John Huse, husband of the testatrix ; and in holding and asserting said interest in such a manner as to cause said real estate to be sold at a disadvantage and a low price ; and in being the purchaser, or interested in the purchase, of said real estate, to the damage of the plaintiffs as residuary legatees.

The defendants objected that this claim of the plaintiffs could not be maintained in this suit, because the damages claimed are uncertain and unliquidated ; the executor's account, including the proceeds of the sale, had been allowed by the probate court, and no appeal was taken ; the sums to which the plaintiffs are entitled are their shares of the balance of said account ; each of the plaintiffs in interest should prove a separate demand, made upon the executor for a specific sum before suit ; this claim should have been made and established in some probate proceeding in the first instance, and a decree of distribution based thereon ; there has been no decree of distribution, and no neglect of the executor to obey and execute such decree.   The court, considering this question settled by the former decision in this case, overruled the objection ; and the defendants excepted.

The court found that the omission of the executor to return an inventory within three months was caused by his waiting, in good faith, for the plaintiffs to raise money to pay the charges against the estate and to settle the estate without the expense of administration ; that the delay was for their benefit, and without any fault in fact on his part ; and that his omission to render an account within a year did not cause any substantial damage to the plaintiffs.

The court also found that the executor caused the interest of John Huse to be bought December 3, 1867, in good faith, for the plaintiffs' benefit, and at their request, for the purpose of being conveyed to them

when they should be able to pay for it; that they were unable to pay for it, or to buy the interest of the testatrix, or to pay the charges against her estate; that the interest of the testatrix ought to have been sold for $570 instead of $425; and that the plaintiffs are entitled to damages to the amount of the difference between those sums, with such interest as the whole court shall determine.

*Flint* and *Blanchard,* for the plaintiff.

*Marshall & Chase,* for the defendants.

BELLOWS, C. J. The plaintiff's second replication to the defendants' plea of *omnia performavit* alleges that the executor did not well and truly administer the estate of the deceased, but fraudulently sold the real estate to one Hurd, in trust for his own benefit, for a sum much below its real value. The demurrer to this replication admitted its truth so far as well .pleaded, and the demurrer was overruled by the whole court holding the matter set forth to be a breach of the condition of the bond.

Upon a hearing in chancery, a breach of the bond having been established, the defendants contended that the executor's accounts, including the proceeds of this sale, having been adjusted and allowed in the probate court, and this claim not having been there established and no decree of distribution passed, this claim could not be maintained in this suit. But this objection was overruled, upon the ground that it was settled by the former decision.

Whether it was so settled is now an important inquiry. The substance of that replication is, that the executor was guilty of unfaithful administration in selling the real estate of the testator, for much less than its value, to a third person to hold in trust for the executor, with the view to defraud the parties interested in the estate; but there is no allegation of any charge made or allowed in the probate court on this account, or any decree of distribution; or that the claim was in any way liquidated. Does, then, a decision, that the acts of the executor described in the replication constitute a breach of the bond, necessarily imply that, in determining to whom and for what sums executions shall be awarded, this court is to exercise an independent jurisdiction, and even to reëxamine the adjustment of accounts in the probate court, from which no appeal has been taken? In a suit upon an administration bond where a breach is shown, there shall be a judgment in favor of the judge of probate for the whole penalty, and the judgment shall be security for all interested. During the pendency of the suit, other persons may be allowed to come in and indorse the writ and be parties, upon giving security for costs; and after judgment, persons interested, on giving security for costs, may sue out a *scire facias* on such judgment, to show cause why execution should not be awarded for their use out of the same. Gen. Stats., ch. 187, secs. 4, 7, 8, 11, and 12.

For breach of the bond there can be only one judgment, and that

must be for the whole penalty whatever may be the breach ; and therefore a plea is bad that merely shows that the claim of the person whose name is indorsed on the writ is invalid because not exhibited in due time.   If there appears to have been a breach of the bond, the judge of probate is entitled to judgment for the penalty, to stand as security for all persons interested, whether their names are indorsed on the writ or not.   *Judge of Probate* v. *Davis*, 1 N. H. 248.

It must follow, as matter of course, that persons interested may be entitled to an award of execution, even although their claims were not perfected when the suit on the bond was brought, or even when the judgment was rendered, either by the proper decrees in the probate court, by judgment at law, or by assent of the executor.   Accordingly, in *Gookin* v. *Hoit*, 3 N. H. 392, where the breach of condition was confessed by default, the cause was continued, to give the creditor an opportunity to cite the administrator before the probate court to render and settle his administration account; but the administrator on such citation, having refused to render such account, the court, at a subsequent term, held the refusal to be an admission of sufficient assets and a refusal to pay, and awarded to the creditor an execution for the amount of the debt allowed by the commissioner.

In the *Judge of Probate* v. *Heydock,* 8 N. H. 499, the breach of the administration bond was confessed, and upon a hearing in chancery execution was awarded to the administrator *de bonis non* for the amount found in the hands of the executor by the probate court, at a time subsequent to the bringing the suit on the bond.   It was held there that the question was not whether the nonpayment of the balance in the executor's hands was a breach of the bond, but whether the administrator *de bonis non* was entitled in equity to have execution for the balance ; and it was held that he was, although the decree of the probate court was many years subsequent to the bringing of that suit.

The same principle is recognized in Massachusetts,—*Hooker* v. *Olmstead*, 6 Pick. 481,—where execution was awarded for sums of money received by the administrator since the commencement of the action.

It is quite obvious that this must be the true doctrine.   The security is to be made available for the faithful discharge of the trust at every stage of it, whether a suit has been brought on the bond or not; and it would be absurd to say that by obtaining a judgment for the penalty of the bond, no remedy could be had upon it for subsequent cases of maladministration.

The matter before the court at the last October term was a hearing in chancery.   The breach of the condition of the bond had been established by the pleadings and the decision thereon, and the judge of probate was entitled to judgment for the penalty.

The only question left was, whether in equity the persons whose names were indorsed upon the writ were entitled to an award of executions, and if so, for how much.   The demurrer to the second replication admitted its allegations, which in substance were held to be, that there was fraud in the sale of the real estate, and that constituted under the

statute a breach of the bond; and it might be none the less so, even if it appeared that the injury caused by it had not been liquidated. See *Judge of Probate* v. *Tillotson*, 6 N. H. 38.

The question then arises, How shall the damages caused by such wrongful sale be determined in equity?

For the proceeds of that sale the executor has charged himself in his administration account, which was settled and allowed in the probate court, for the sum of $425.00. The persons who are prosecuting this suit contend that he ought to have been charged with a much larger sum. It is very clear that it was within the jurisdiction of the probate court to determine that question, and decide how much he should be charged with. And we are inclined to the opinion that the probate court alone has original jurisdiction of that question.

By the General Statutes, ch. 170, sec. 2, he has jurisdiction of the probate of wills, and of granting administration, and of all matters and things of probate jurisdiction relating to the sale, settlement, and final distribution of the estates of deceased persons. The jurisdiction of the supreme judicial court in such matters is simply appellate. Gen. Stats., ch. 189, sec. 2.

The decisions in our State are to the effect that only the probate courts have original jurisdiction in cases of this sort. In *Gookin* v. *Hoit*, 3 N. H. 392, the breach of the bond was admitted by the default, and the plaintiff moved for an execution for $74.74, on the ground that the administrator had failed to inventory and account for certain personal estate, or to obtain license and sell certain real estate. The court held that the proper remedy for the creditor was to cite the administrator to appear before the probate court and render an account; and the cause was continued for that purpose. In *Judge of Probate* v. *Briggs*, 5 N. H. 66, it was held that the refusal of an executor to account for a particular sum supposed to have been received by him was not a breach of his bond. This went upon the ground that it was no breach of the bond to refuse to account for what he contended he had not received, and that the time to determine the validity of such a claim is when the administration account is adjusted in the probate court. In delivering the opinion, the court cites the case of *Rogers* v. *Wendell*, Rockingham county, November term, 1815, in which Smith, C. J., said that " whoever sued upon a probate bond must show a claim as creditor, heir, or legatee, and that there was a just debt. In general, all claims must be liquidated before they could be recovered upon a probate bond. If a claim was admitted, it need not be further liquidated. In that case, the claim was neither liquidated nor admitted, and could not be enforced in that way," that is, by a suit on the bond.

In the case of *Lovell* v. *Briggs* there was a verdict of the jury charging the executor with the money in question, but judgment was arrested on the ground that a refusal to account for the money in question was no breach of the bond. So a refusal to pay a debt of the testator is not a breach of the bond, unless the executor had previously admitted it to be due. *Judge of Probate* v. *Locke*, 6 N. H. 396. So

in respect to a legacy not assented to or otherwise established. *Judge of Probate* v. *Kimball*, 12 N. H. 165.

In *Hurlburt* v. *Wheeler*, 40 N. H. 75, it was held that no action could be maintained upon an administration bond for not inventorying and accounting for the estate of the intestate, without first obtaining a decree requiring the administrator to account further, and his failure to do so,—saying, that the time and place to charge the administrator with property belonging to the estate not inventoried or accounted for is in the probate court, on his settlement of his administration account there.

As before stated, the amount found in the hands of the executor by the probate court, after the suit on the bond was brought and the breach admitted, was the amount fixed upon in the hearing in chancery for the award of execution, in *Judge of Probate* v. *Heydock*, 8 N. H. 491 ; and in that case there is good reason to believe that the decision was delayed for several years to await the action of the probate court. In Massachusetts, it was decided that a court of equity had no authority to resettle an administration account, alleged to have been erroneously or fraudulently settled in the probate court, but the remedy is by appeal—*Jenison* v. *Hapgood*, 7 Pick. 1 ; or, if the settlement is a nullity, by citing in the administrator to render an account. In New Hampshire, the decisions of the probate court of matters within its jurisdiction are conclusive, in the same manner and to the same extent as the judgments of other courts of record. *Tebbetts* v. *Tilton*, 31 N. H. 284 ; *Merrill* v. *Harris*, 26 N. H. 142.

In the case before us, the question of the amount to be charged to the executor for the real estate sold by him was not only within the sole original jurisdiction of the probate court, but it was actually adjudicated there by fixing the amount at $425 ; and that is conclusive against the whole world unless modified on appeal, or unless, upon a further account in the probate court, a manifest error appear. Nor does the fact that fraud in the sale is imputed to the executor make any difference, for, as an incident of the general jurisdiction of the probate court, it has authority to try all questions of fraud arising in the settlement of estates. *Tebbetts* v. *Tilton*, 31 N. H. 284 ; *Wade* v. *Lobdell*, 4 Cush. 510.

In this case, the question is, For what amount shall the defendant account? and that has been passed upon by the probate court, and no appeal taken, although in case of mistake the probate court has still power to correct it—*Allen* v. *Hubbard*, 8 N. H. 489; *Stark* v. *Gamble*, 43 N. H. 467 ; but we think this court has no power to revise this decree except on appeal. Besides, a decree of distribution is necessary, and that is clearly within the jurisdiction of the probate court alone.

If this court has jurisdiction in this case to charge the executor with an additional amount for the real estate sold, it may of course charge him for moneys or property received for which no credit has been given by him, and, as a necessary consequence, give the executor proper credits on account of expenses of administration.

The result would be, the exercise of original jurisdiction in the settlement of accounts of administration, which has obviously never been contemplated.

It is urged that this action cannot be maintained because the claim was not exhibited to the executor according to the provisions of sec. 1, ch. 179 of the General Statutes. That section provides that no action shall be sustained against any administrator if commenced within one year after the original grant of administration, nor unless the demand has been exhibited to the administrator and payment demanded; and by section two it is provided that no such action shall be sustained unless the demand was exhibited to the administrator within two years after the original grant of administration.

These provisions, however, do not apply to claims arising against administrators after the grant of administration, which are founded rather upon their private liability for breach of duty, than upon their obligations as representatives of their intestates. Such claims may not arise at all until after the lapse of two years from the original grant of administration, and of course could not be exhibited in the time limited by these provisions. This furnishes a strong argument against a construction of these provisions that should extend them beyond demands against the testator or intestate, existing at his death, inasmuch as they could have no practical application; and so we think it has always been understood. By the law of 1789, 1 N. H. Laws 212, sec. 18, the provision clearly applies only to claims against the estate existing at the decease; and so is the law of January 2, 1829, ed. 1830, p. 370. The General Statutes are the same as the Revised Statutes, which are but a revision of the older statutes, and not intended to change them; and this is shown by subsequent decisions under the Revised Statutes, which hold that the design of the statute requiring the exhibition of claims to the administrator was to bring them to his knowledge so that he might be enabled to judge in what manner the estate should be settled. This is the doctrine of *Tebbetts* v. *Tilton*, 31 N. H. 282, per BELL, J.; and also of *Little* v. *Little*, 36 N. H. 228, per SAWYER, J.

This is clearly the object of these provisions, and it could have no application to demands subsequently arising against the administrator in his private capacity, as is the case with the present claim.

*Finding set aside.*